ORIGINAL "

5³⁰

1    PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

2    Name ___ SEASTRUNK _____ NATHAN _____
              (Last)              (First)            (Initial)

3    Prisoner Number __ V-81987 _____

4    Institutional Address __ SOLANO STATE PRISON, 6-218 _____

5    _____ P.O.BOX 4000, VACAVILLE, CA.95696 _____

6    ============================================================
                    UNITED STATES DISTRICT COURT
7                  NORTHERN DISTRICT OF CALIFORNIA

8          NATHAN SEASTRUNK
     (Enter the full name of plaintiff in this action.)                    **CV  08  ⌐ 3444**
9
                        vs.                          Case No. _____
10                                                   (To be provided by the clerk of court)
                                                                          **WHA**
11    _____               PETITION FOR A WRIT
                                                OF HABEAS CORPUS           **(PR)**
12    _____
          D.K. SISTO
13
                      WARDEN.                         **E-filing**
14    (Enter the full name of respondent(s) or jailor in this action)

15

16    ================================================================
                  Read Comments Carefully Before Filling In

17    When and Where to File

18          You should file in the Northern District if you were convicted and sentenced in one of these

19    counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20    San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21    this district if you are challenging the manner in which your sentence is being executed, such as loss of

22    good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23          If you are challenging your conviction or sentence and you were not convicted and sentenced in

24    one of the above-named fifteen counties, your petition will likely be transferred to the United States

25    District Court for the district in which the state court that convicted and sentenced you is located. If

26    you are challenging the execution of your sentence and you are not in prison in one of these counties,

27    your petition will likely be transferred to the district court for the district that includes the institution

28    where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS          - 1 -

1  Who to Name as Respondent

2         You must name the person in whose actual custody you are. This usually means the Warden or

3  jailer. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6         If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now and the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11         1. What sentence are you challenging in this petition?

12             (a)    Name and location of court that imposed sentence (for example; Alameda

13                    County Superior Court, Oakland):

14             SAN MATEO SUPERIOR COURT _____ SAN MATEO _____

15                    Court                              Location

16             (b)    Case number, if known _____ SC 055718 B _____

17             (c)    Date and terms of sentence _FEBRUARY 10, 2005, 13yrs.

18             (d)    Are you now in custody serving this term? (Custody means being in jail, on

19                    parole or probation, etc.)          Yes _X_    No _____

20                    Where?

21                    Name of Institution: SOLANO STATE PRISON

22                    Address: _____ P.O.BOX 4000, VACAVILLE, CA. 95696

23         2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26         Pen. Code 212.5 & Pen. Code 460, subd. (a), Pen. Code

27         12022.53 subd. (b), Pen. Code 12022.5 subd. (a).

28

PET. FOR WRIT OF HAB. CORPUS      - 2 -

1    3. Did you have any of the following?

2         Arraignment:                                    Yes X      No _____

3         Preliminary Hearing:                            Yes X      No _____

4         Motion to Suppress:                             Yes X   .  No _____

5    4. How did you plead?

6         Guilty _____    Not Guilty  X   Nolo Contendere _____

7         Any other plea (specify) _____

8    5. If you went to trial, what kind of trial did you have?

9         Jury  X      Judge alone_____  Judge alone on a transcript _____

10   6. Did you testify at your trial?                    Yes ✘      No _____

11   7. Did you have an attorney at the following proceedings:

12        (a)   Arraignment                               Yes X      No _____

13        (b)   Preliminary hearing                       Yes X      No _____

14        (c)   Time of plea                              Yes X      No _____

15        (d)   Trial                                     Yes X      No _____

16        (e)   Sentencing                                Yes X      No _____

17        (f)   Appeal                                    Yes X      No _____

18        (g)   Other post-conviction proceeding          Yes _____  No X

19   8. Did you appeal your conviction?                   Yes X      No _____

20        (a)   If you did, to what court(s) did you appeal?

21              Court of Appeal                           Yes X      No _____

22              Year: 2006       Result: DENIED _____

23              Supreme Court of California              Yes X      No _____

24              Year: 2007       Result: DENIED _____

25              Any other court                          Yes _____  No X

26              Year: _____   Result: _____

27

28        (b)   If you appealed, were the grounds the same as those that you are raising in this

| | | | | |
|---|---|---|---|---|
| 1 | | petition? | Yes _____ | No X |
| 2 | (c) | Was there an opinion? | Yes _____ . | No X |
| 3 | (d) | Did you seek permission to file a late appeal under Rule 31(a)? | | |
| 4 | | | Yes _____ | No X |

5   If you did, give the name of the court and the result:

6   _____

7   _____

8   9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9   this conviction in any court, state or federal?          Yes _____   No X

10   [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11   challenged the same conviction you are challenging now and if that petition was denied or dismissed

12   with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13   for an order authorizing the district court to consider this petition. You may not file a second or

14   subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15   U.S.C. §§ 2244(b).]

16   (a)   If you sought relief in any proceeding other than an appeal, answer the following

17        questions for each proceeding. Attach extra paper if you need more space.

18        I.   Name of Court: _____

19             Type of Proceeding: _____

20             Grounds raised (Be brief but specific):

21             a._____

22             b._____

23             c._____

24             d._____

25             Result: _____ Date of Result: _____

26        II.  Name of Court: _____

27             Type of Proceeding: _____

28             Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS      - 4 -

1  a._____

2  b._____

3  c._____

4  d._____

5  Result: _____ Date of Result:_____

6  III.  Name of Court: _____

7  Type of Proceeding: _____

8  Grounds raised (Be brief but specific):

9  a._____

10  b._____

11  c._____

12  d._____

13  Result: _____ Date of Result:_____

14  IV.  Name of Court: _____

15  Type of Proceeding: _____

16  Grounds raised (Be brief but specific):

17  a._____

18  b._____

19  c._____

20  d._____

21  Result: _____ Date of Result:_____

22  (b)  Is any petition, appeal or other post-conviction proceeding now pending in any court?

23  Yes _____   No__X__

24  Name and location of court: _____

25  **B. GROUNDS FOR RELIEF**

26  State briefly every reason that you believe you are being confined unlawfully. Give facts to

27  support each claim. For example, what legal right or privilege were you denied? What happened?

28  Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS     - 5 -

1  need more space. Answer the same questions for each claim.

2        [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5        Claim One: _____ SEE ATTACHED _____

6        _____

7        Supporting Facts:_____ SEE ATTACHED _____

8        _____

9        _____

10       _____

11       Claim Two:_____ SEE ATTACHED _____

12       _____

13       Supporting Facts:_____ SEE ATTACHED _____

14       _____

15       _____

16       _____

17       Claim Three:_____ SEE ATTACHED _____

18       _____

19       Supporting Facts:_____ SEE ATTACHED _____

20       _____

21       _____

22       _____

23       If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25       _____ N/A _____

26       _____

27       _____

28       _____

PET. FOR WRIT OF HAB. CORPUS        - 6 -

**CLAIM 1**    THE COURT BELOW ERRED AND VIOLATED APPELLANT'S FEDERAL CONSTITUTIONAL FOURTH AMENDMENT RIGHTS BY DENYING APPELLANT'S MOTION TO SUPPRESS SEIZED EVIDENCE AND THE FRUITS OF THE UNLAWFUL DETENTION OF APPELLANT

Appellant and codefendant Brooks filed a motion to supress all of the evidence seized, and the fruits of all evidence seized, in the unlawful stop, detention and search of the van in which appellant, Brooks, Melvin, and Michael were stopped. (1CT289.)

The 911 call from Angela and Rebecca was received at 8:34 p.m. (SRT11.) In that call, Rebecca first stated that the suspects were "in a SUV with the tire on the back." (1ACT86.) She then immediately stated that they were in a "big van" and a "gray van." (1ACT87.)

She responded in the affirmative to a question whether it was a gray van. The dispatcher, who was receiving information from officers including Ponzini, asked Angela if the van had a roof rack, and Angela responded that she did not know. (SRT89.) She said the van was "old," "big," and was "like one of those old vans like a SUV kind of like" and that it "had a big wheel on the back". (1ACT89,90.)

Officer Ponzini received a dispatch regarding the robbery very soon after the 911 call was received, at around 8:34 p.m. (SRT29.) About two minutes later Ponzini saw a "gray-blue" van, that he thought was gray when he first saw it, which was an older model van traveling westbound on Sneath Lane, around one-half mile to seven-tenths of a mile from 2110 Fleetwood.(SRT30-31, 45, 59.)

Ponzini testified in response to defense counsel's "It's a blue colored van; it's not gray?": "Right.  When I got up real close to the van, I could tell there was blue in it." (SRT59.)

1.

1  There was foil covering the back windows of the van.  Ponzini
2  saw some silhouettes of people moving in a normal manner through
3  the foil. (SRT33-34.)

4  Ponzini requested the dispatcher find out if that matched the
5  description, and the dispatcher responded that the caller could not
6  really say anything more than that it was gray in color and there
7  was "a spare tire was on the back of the van." (3ACT3.)  Ponzini
8  reported there was no tire on the back of the van and that there
9  was a roof rack. (3ACT3.)

10  In ruling on the motion, the court agreed with defense counsel
11  for Mr. Brooks as to the color of the van that it was blue.

12  Defense counsel stated: "The officers did indicate, upon closer
13  inspection,the van appeared to be blue," and the court replied:
14  "Correct.  He did." (SRT84.)  However, the court summarily con-
15  cluded that the stop of the van, the search and the arrests were
16  "supported" and denied the motion to suppress. (SRT84.)

17  Finally, due to the tin foil on the windows (which Angela did
18  not report) Ponzini had no idea if the persons in the van matched
19  the general description of black males given by Angela.

20  **CLAIM 2**   **THE TRIAL COURT VIOLATED APPELLANT'S FOURTEENTH**
                **AMENDMENT RIGHTS TO DUE PROCESS AND A FAIR TRIAL**
21              **BY DENYING THE DEFENSE REQUEST TO EXCLUDE MICHAEL'S**
                **OUT OF COURT STATEMENTS ON THE GROUNDS THAT THEY**
22              **WERE INVOLUNTARY AND UNRELIABLE**

23  Michael G.'s original statement to juvenile probation officer
24  Regina Espinoza was coerced, involuntary, and unreliable and be-
25  cause the coercion tainted Michael G.'s subsequent statement and
26  testimony.  Michael G.'s statement to Espinoza was motivated by
27  the implied promise of leniency and threat of harsher treatment
28  for failing to speak inherent in Espinoza's initial statements

2.

1  to Michael G. regarding the purposes of the interview. "Upon

2  front" and before taking the statement, Espinoza explained to

3  Michael that the reason why she was preparing the detention report

4  was to determine "whether or not to let him go," and that the de-

5  cision would be made "whether or not he will be released," that

6  she had to write a report, and that it would be submitted to the

7  judge. (1RT46, 48, 51.) Michael's age, vulnerability and lack of

8  sophistication demonstrate that he would not have felt free to

9  contradict his statement to Espinoza. Michael was a youth, a

10 ward of the court, alone, placed in a police car with two very

11 potent symbols of authority. (4RT525-35.) Moreover both Michael's

12 statement to Espinoza and his statement to the prosecutor and

13 Guldner were given under circumstances that make the statements

14 inherently unreliable. Michael was a suspect and he had a motive

15 to pass the blame. Here, there was no dispute that Regina Espinoza

16 made an implied promise of leniency and threat of harsher punish-

17 ment: she testified to it openly and acknowledged doing it. (1RT

18 46, 48, 51.)

19 **CLAIM 3**  **THE TRIAL COURT ERRED IN DETERMINING THAT MICHAEL**
            **COULD NOT INVOKE HIS FIFTH AMENDMENT RIGHT AGAINST**
20          **COMPELLED SELF INCRIMINATION; THE ERROR RESULTED IN**
            **A VIOLATION OF APPELLANT'S SIXTH AMENDMENT RIGHTS TO**
21          **CROSS EXAMINATION AND FOURTEENTH AMENDMENT RIGHTS**
            **TO DUE PROCESS AND A FAIR TRIAL**

22

23     The trial court's failure to allow Michael G. to invoke his

24 privilege against self incrimination resulted in a violation of

25 appellant's Sixth Amendment rights to confrontation and cross

26 examination.

27     Prior to trial, defense counsel for Mr. Brooks filed a motion

28 asserting that if Michael invoked the Fifth Amendment privilege at

3.

1  trial or stonewalled in his testimony, his pre-trial statements
2  would be inadmissible because they were testimonial and appellant
3  Brooks would be denied his rights to confrontation and  cross
4  examination. (2ACT8-12.)  Defense counsel for appellant joined in
5  this motion (2CT459; 1RT309; 4RT417-18.)

6    Defense counsel also specifically argued, after Michael's trial
7  testimony, that because Michael had stonewalled appellant was
8  denied his confrontation and cross examination rights. (4RT417-18.)

9    Here, the trial court erred by failing to allow Michael to in-
10  voke his Fifth Amendment right to be free from self incrimination
11  because Michael had reasonable cause to apprehend danger of pro-
12  secution for offenses other than the charges of committing a rob-
13  bery against Angela an Aaron, which were dropped by the prosecut-
14  ion. (1RT17-58, 151-60.)

15    Even if this apprehension of danger were not enough, Michael
16  had a reasonable apprehension of danger that, if his testimony
17  differed from his pre-trial statement to the juvenile probation
18  officer or to the prosecutor and San Bruno police officer Guldner,
19  he could be prosecuted for lying to a peace officer.

20    The court's error resulted in a violation of appellant's Sixth
21  Amendment rights to confrontation and cross examination, because,
22  in light of the reasonableness of Michael's apprehension of danger,
23  Michael's stonewalling during his testimony was materially indis-
24  tinguishable from an attempt to invoke this Fifth Amendment right
25  against self incrimination before the jury.

26    However, Michael was a recalcitrant witness for the prosecution
27  at trial, who answered "I don't remember" or just "no" to every
28  substantive question asked of him about the robberies and his
     probation officer, the prosecutor and Officer Guldner. (4RT391-412.)

4.

1  **CLAIM 4**    THE TRIAL COURT ERRED AND VIOLATED APPELLANT'S
               FOURTEENTH AMENDMENT RIGHTS TO DUE PROCESS AND
2              A FAIR TRIAL BY ALLOWING THE PROSECUTOR TO IN-
               TRODUCE THE TESTIMONY OF DEPUTY DISTRICT ATTORNEY
3              THOMAS THAT THE JUVENILE PETITION CHARGED AGAINST
               MICHAEL WAS DISMISSED FOR INSUFFICIENT EVIDENCE,
4              PROSECUTORIAL TESTIMONY CONSTITUTED IMPROPER
               VOUCHING FOR THE RELIABILITY AND VERACITY OF
5              MICHAEL

6      The trial court erred and violated appellant's rights to due

7  process and a fair trial by admitting the testimony of Deputy Dis-

8  trict Attorney Thomas regarding his opinion that there had been

9  insufficient evidence to charge Michael G. for the robbery of Aaron

10 and Angela because Thomas's testimony constituted improper vouching

11 by a member of the prosecutor's office, was irrelevant, not impeach-

12 ing of any testimony, and was an improper expert opinion on a ques-

13 tion of fact that was entirely within the jury's province. (1RT16-

14 31; 4RT390-421, 542-545; 5RT587, 693, 731-737.)

15     As Eddie Thomas and Michael G. testified repeatedly at trial and

16 as the attorney general acknowledged on appeal, Michael G. had

17 pleaded guilty to San Francisco juvenile robbery charges in ex-

18 change for a dismissal of the charges in the instant case. (1RT31;

19 4RT407; 5RT731; RB, p.41.)  The plea bargain did not include a

20 promise that Michael G. would testify at appellant's trial, and

21 appellant has never contended otherwise, either at trial or on

22 appeal. (1RT31; 4RT407; 5RT 731.)

23     The fact that this plea bargain existed was established by re-

24 peated testimony by Eddie Thomas under oath, that Michael G. en-

25 tered into a plea bargain in which the charges in the instant case

26 were dismissed in exchange for a guilty plea in the San Francisco

27 robbery case: Q You waited until both cases were adjudicated to-
                   gether on a pretrial conference of some sort, and
28                 then you made it part of the plea, that if he

5.

1    were if he were to plaed guilty to the San
     Francisco case, you would dismiss the rob-
2    bery case in this county, right?
     A Yes.  (1RT31.)

3    Q Did from review of the files, did Michael
     and his attorney accept the offer at the
4    pretrial conference, that is to admit the
     one robbery and have the other robbery dismissed?
5    A Yes,sir.  (5RT731.)

6

7    On cross examination, Michael G. responded "yes" to the this

8    question: "And as part of the plea bargain, the District Attorney

9    office gave you a break and dismissed the case against you invol-

10   ving these sets of facts."

11   **CLAIM 5    THE PROSECUTOR COMMITTED MISCONDUCT AND VIOLATED
             APPELLANT'S FEDERAL CONSTITUTIONAL RIGHTS TO DUE
12           PROCESS AND A FAIR TRIAL UNDER THE FOURTEENTH
             AMENDMENT AND SIXTH AMENDMENT RIGHTS TO CONFRONT-
13           ATION AND CROSS EXAMINATION BY MISLEADING THE JURY
             REGARDING THE FACTS, ARGUING FACTS OUTSIDE OF THE
14           EVIDENCE, AND VOUCHING FOR THE RELIABILITY OF
             WITNESSES'S TESTIMONY**

15

16   Appellant claimed on appeal that the prosecutor violated his

17   Sixth and Fourteenth Amendment rights by misleading the jury re-

18   garding the facts, arguing facts outside of the evidence, and

19   vouching for the reliability of deputy district attorney Thomas's

20   testimony and all testimony regarding Michael G.'s out of court

21   statements.

22   The prosecutor proceeded on the sole theroy that appellant and

23   Brooks were the direct perpetrators of the robberies of Angela

24   and Aaron and asked the jurors to find appellant not guilty if he

25   was just sitting in the van. (7RT963-64.)  Aiding and abetting

26   instructions were given, apparently to assist the jury in de-

27   termining, based on the evidence at trial, whether Michael was

28   an accomplice and whether his statements therefore must have

6.

1 | been corroborated. (2CT551-558; 7RT916-19.)

2 | The prosecutor argued in closing:

3 |     Okay, now Michael's not given a deal for his
      testimony. That's why we had Mr. Thomas come in.
4 |     Remember what was going on? He had two robbery
      charges. This one was filed against him, plus
5 |     the one involving Mr. Manto from September of 03.
      And it turns out that Michael G. had not come to
6 |     court on the Manto case. And has actually a bench
      warrent out for him when this robbery occurred.

7 |
      So he's actually facing two charges in juvenile
8 |     court. And Mr. Thomas said he reviewed it and
      he felt this one was nearly impossible to prove
9 |     or whatever he said, insufficient evidence to
      prove this against Michael G. And that this case
10 |    was dismissed against him.

11 |    It was not dismissed as part of a deal for his
      testimony. It was just dismissed. He had to
12 |    admit the other robbery. And in that other there
      was no deal for his testimony in this case.
13 |    (7RT943-44.)

14 | The above cited argument by the prosecutor, especially con-

15 | sidered with the argument that immediately followed and later

16 | arguments by the prosecutor, constituted misconduct because it

17 | misled the jury to believe that there either was not or might not

18 | have been a plea bargain "deal" that resulted in the dismissal

19 | of the San Bruno robbery charge against Michael.

20 | The argument that immediately followed was:

21 |     Now, why was the case dismissed against Michael G.?
      I think when you look at the jury instruction,
22 |     I would submit that there is a line, there is in-
      structions that talk about what principals are,
23 |     and what aider and abettors are. I'll get to that
      in a minute. But it says mere presence at the scene
24 |     of the crime is not enough. You have to do some-
      thing to aid and encourage the crime before you
25 |     are liable. So if Michael was simply sitting in
      the van and not doing anything to encourage or aid
26 |     the robberies, then he is a not guilty, even if
      he knew.
27 |     (7RT943-44.)

28 | At that point, defense counsel objected that the prosecutor's

7.

1 argument referred to facts not in evidence, and the trial court
2 sustained the objection, saying to the prosecutor "just limit
3 it to what we have, if you would." (4RT944.)  The prosecutor
4 requested that the jurors rely on their memories if he misstated
5 the evidence, but then the prosecutor immediately repeated the
6 same improper argument, augmenting it with yet further improper
7 vouching: "But I would submit it would have been very hard to
8 prove Michael aided, abetted, assisted the robbers."  (7RT944.)

9     Defense counsel again objected that the prosecutor was re-
10 ferencing facts outside the evidence, and the trial court sus-
11 tained the objection and struck the argument, saying "strike "
12 that out.

13

14 **CLAIM 6    APPELLANT'S FEDERAL CONSTITUTIONAL RIGHTS TO
            DUE PROCESS AND A FAIR TRIAL UNDER THE FOUR-
15          TEENTH AMENDMENT AND HIS SIXTH AMENDMENT RIGHT
            TO JURY TRIAL WERE VIOLATED BECAUSE THE BEYOND
16          A REASONABLE DOUBT BURDEN OF PROOF WAS DILUTED
            AND REDUCED AT TRIAL, AND DEFENSE COUNSEL PRO-
17          VIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY
            FAILING TO OBJECT TO THE PROSECUTOR'S IN-
18          CORRECT ARGUMENTS REGARDING THE BURDEN OF
            PROOF**

19

20 A.   The Prosecutorial Misconduct

21     The prosecutor committed misconduct and violated appellant's
22 to due process and fair trial by diluting the burden of proof
23 during closing argument.

24     The prosecutor argued in closing:

25     Remember what I argued to you or mentioned in voir dire, if
26 reasonable doubt is anything, it's not, I have to be sure he's
27 guilty.  If a juror was to come back and say, I just wasn't sure
28 he was guilty, my response perhaps would be, but you don't have

1  to be sure he's guilty, you have to be convinced beyond a reason-

2  able doubt he's guilty.  Okay.  It's not the same thing.  (7RT956.)

3      The prosecutor also argued in closing:

4      Okay.  Reasonsable doubt.  Can't forget reasonable doubt.

5      What is reasonable doubt?  The judge read you the definition.

6      I'm not going to read it all, but it's clear what it is not.

7      It is not a possible doubt.  Because everything relating to hu-

8  man affairs is open to some possible or imaginary doubts.

9      So you - you got to look - you have a reasonable doubt.

10     Here's a way I suggest you go at it.  You don't have to do it

11  this way, but if it helps, I suggest a three step process to decide

12  if you've got a reasonable doubt as to the evidence.

13     One, if a reasonable doubt is anything, it's a doubt based on

14  don't want to find him guilty, but you can't say why.  That I

15  would submit is not a reasonable doubt.

16     Two, if you if you've given your doubt a reason, make sure the

17  reason is one the law allows.  You can't be because you don't want

18  to find him guilty because you are worried about his kids or wor-

19  ried about his punishment.  The law doesn't allow that.  Okay.

20     So if you have a reason, if you make sure it's the law allows,

21  then hopefully your doubt is based on the evidence.  And if it's

22  based on a conflict in the evidence, you decide what happened.

23     If you can decide what really happened, then see if you have

24  a reasonable doubt.  If you still do, then, fine, acquit Mr.

25  Seastrunk.  (7RT963.)

26  B.   Ineffective Assistance of Counsel

27     Defense counsel could not have had a plausible, tactical

28  reason for failing to object to the challenged prosecutorial

9.

1    arguments about the burden of proof, and he provided ineffective
2    assistance of counsel in failing to object.

3    **CLAIM 7    THE TRIAL COURT PREJUDICIALLY ERRED IN ADMITTING**
         **EXHIBITS 27 AND 28,THE "BOOKING" AND "PROPERTY"**
4        **SHEETS FOR MICHAEL FROM JUVENILE HALL, OVER**
         **DEFENSE COUSEL'S HEARSAY OBJECTIONS; THIS ERROR**
5        **VIOLATED APPELLANT'S FEDERAL CONSTITUTIONAL**
         **RIGHTS TO CONFRONTATION AND CROSS EXAMINATION**
6        **UNDER THE SIXTH AMENDMENT**

7    The trial court erred and violated appellant's confrontation
8    rights by admitting Michael G.'s booking and property inventory
9    sheets from Juvenile Hall (exhs. 27 and 28), and Barry Thompson's
10   testimony in which he read from the exhibits, which were prepared
11   by someone else.

12   However, Angela and Aaron's testimony that they could not rule
13   out that Michael G. was the "second" robber who had been in the
14   bedroom with Aaron; Angela's testimony and statements that that
15   robber was "short" and that Michael was about her height, which
16   was five feet four inches tall; the fact that the robbery occurred
17   over 1 year prior to Michael's testimony at trial; and the fact
18   that Michael was only 16 at the time he testified at trial.
19   (1ACT89; 4RT364-67, 370, 392-394, 476-78; 5RT685-87.)

20   Sergeant Mahon gave only an eyeball estimate of what Michael G.
21   heighe was a year prior to his testimony, the booking sheet was
22   of particular importance in the prosecution's attempt to prove
23   that Michael G. had not been shorter at the time of the robbery
24   than he was at trial. (4RT442, 589-90.)

25   Since identity was the crucial issue at trial, and evidence
26   regarding the height and clothing of the suspects was in turn
27   crucial to the issue of identity, the erroneous admission of the
28   booking and property sheets was highly damaging to appellant's

10.

1  defense.

2  **CLAIM 8**    REVERSAL OF APPELLANT'S CONVICTIONS IS REQUIRED
              BECAUSE THE CUMULATIVE IMPACT OF THE MULTIPLE
3              STATE LAW AND FEDERAL CONSTITUTIONAL ERRORS
              RESULTED IN A MISCARRIAGE OF JUSTICE AND DE-
4              PRIVED APPELLANT OF A FUNDAMENTALLY FAIR TRIAL
              IN VIOLATION OF HIS FOURTEENTH AMENDMENT RIGHT
5              TO DUE PROCESS

6      The cumulative prejudicial impact of the errors identified in

7  claims 1 through 7 resulted in a miscarriaged of justice.  The

8  errors also violated appellant's federal constitutional right to a

9  fair trail.

10  **CLAIM 9**    THE TRIAL COURT ERRED UNDER STATE LAW AND VIOLATED
              APPELLANT'S FIFTH, SIXTH AND FOURTEENTH AMENDMENT
11              RIGHTS TO A FAIR AND IMPARTIAL JURY, TO DUE PROCESS
              AND TO A FAIR TRIAL BY REFUSING TO EXCUSE A JUROR
12              FOR CAUSE AND REFUSING DEFENSE COUNSEL'S REQUEST FOR
              ADDITIONAL PEREMPTORY CHALLENGES, WHICH FORCED
13              APPELLANT TO PROCEED TO TRIAL WITH AN UNACCEPTABLE
              JURY

14

15      The trial court erred under state law and violated appellant's

16  state and federal constitutional rights to a fair and impartial

17  jury by denying appellant's challenge for cause and thereby depri-

18  ving him of a peremptory challenge he would have used to excuse a

19  juror who eventually sat on his trial.

20      During jury selection, the trial court denied 8 defense chal-

21  lenges for cause. (2ART288-89; 3RT214-222, 230-236.)  After appel-

22  lant had used 9 out of 10 of his allotted peremptory challenges,

23  defense counsel asked to approach the bench.  Defense counsel had

24  been able to excuse 4 of the jurors he had challenged for cause;

25  other unsuccessfully challenged jurors were in the draw.(1ART155-

26  157; 2ART288; 3RT230-35.)  However, trial juror 7, whom defense

27  counsel had also unsuccessfully challenged, was on the jury panel.

28  (1ART98, 110, 136-37; 2ART210-02; 3RT219-20.)

11.

1  Defense counsel specified that he wished to exercise more per-

2  emptory challenges and that he did not believe he could get a fair

3  and impartial jury within the meaning of the Sixth Amendment with

4  the jury as constituted or if allowed only one additional defense

5  peremptory challenge. (3RT235.)  The court denied defense counsel's

6  request for 10 additional challenges or, in the alternative, a new

7  jury panel. (3RT235-236.)

8  Among the jurors whom the defense challenged for cause and whom

9  the judge did not excaus was prospective juror Church.  On the

10  first day of jury selection, the trial court asked the standard voir

11  dire question whether the jurors or anyone close to them had ever

12  been convicted of a criminal offense.(1ART85-86.)  No one respond-

13  ed.  The next morning, as jury selection began, prospective juror

14  Church admitted he had concealed his own DUI conviction on the

15  previous day:  THE COURT: What seems to be the issue, Mr. Church?
          MR. CHURCH: Your Honor, I must apologize.  Yes-
16        terday I failed to disclose certain information,
          primarily out of embarrassment.  But also due to
17        the fact I didn't believe didn't believe the cir-
          cumstances would inhibit my ability to be a fair and
18        impartial juror.  And now I must own up that, sir.
          THE COURT: Okay.  Go ahead.
19        MR.CHURCH: That I, in 1986, I was convicted.
          THE COURT: Okay. Go ahead.
20        MR. CHURCH: Of a DUI.  And over the course of about
          20 years, I've had my car burglarized twice.  And
21        I was the victim of a strong armed robbery once
          about 18 years ago.
22        THE COURT: And you didn't remember any of this?
          MR. CHURCH: Sir, I didn't remember the any of the
23        criminal activity against me.  I - I - I apolog-
          ize, sir.  And that's why I'm owning up to it.
24        I realize that was wrong.

25        (2ART203-04.)

26  He also described having been robbed by two unarmed African

27  American men in 1989. (2ART206-08.)

28  Defense counsel also cited Church's failure to initially dis-

1    cuss the incident in which he was a robbery victim. (RT230-31.)

2    ///

3    ///

4    ///

5    ///

6    ///

7    ///

8    ///

9    ///

10    ///

11    ///

12    ///

13    ///

14    ///

15    ///

16    ///

17    ///

18    ///

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

1        List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3    of these cases:

4      Terry v. Ohio. 392 U.S. 1, 21; North Carolina v. Butler, 441

5      U.S. 369; Douglas v. Alabama 380 U.S. 415; U.S. v. Roberts

6      618 F.2d 530; Darden v. Wainwright 477 U.S. 168.

7    Do you have an attorney for this petition?                              Yes____    No _x_

8    If you do, give the name and address of your attorney:

9    _____

10        WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13    Executed on __7/13/08__                              _Nathan Eastlick_

14            Date                                    Signature of Petitioner

15

16

17

18

19

20    (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

NATHAN SEASTRUNK
V-81987, 6-218
SOLANL STATE PRISON
P.O.BOX 4000
VACAVILLE, CA. 95696

Pro Se

RECEIVED

JUL 1 5 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CSP SOLANO
STATE PRISON



United States District Court for the
Northern of California
450 Golden Gate Ave.
San Francisco, Ca. 94102



/o    D' Make — 07/13/08

RECYCLED PAPER.
MINIMUM 20% POST-CONSUMER