IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHAN SEASTRUNK,<br><br>        Petitioner,<br><br>  v.<br><br>D.K. SISTO, Warden,<br><br>        Respondent.<br>                                              / | No. C 08-3444 WHA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This is a habeas case filed pro se by a state prisoner pursuant to 28 U.S.C. 2254. The first claim was dismissed, and respondents were ordered to show cause why the writ should not be granted based on the remaining claims in the petition. Respondent has filed an answer and a memorandum of points and authorities in support of it. Petitioner has filed a traverse. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

In 2005, a jury in San Mateo County Superior Court convicted petitioner of robbery (Cal. Pen. Code § 212.5(a)) and burglary (Cal. Pen. Code § 460(a)), and found true the special circumstance that petitioner had used a firearm during the commission of the crimes (Cal. Pen. Code §§ 12022.53(b), 12022.5(a)) (Ex. 3 at 1016-19). The trial court sentenced petitioner to an aggregate prison term of 21 years in state prison, with the eight-year burglary sentence stayed pursuant to Section 654 of the California Penal Code, pending successful completion of the 13-year robbery sentence (Ex. 3 at 1053-54).

1    On July 18, 2007, the California Court of Appeal affirmed the conviction and sentence (Ex. 6). The California Supreme Court denied petitioner's petition for review on October 24, 2007 (Ex. 8).

The following description of the evidence presented at trial is from the opinion of the California Court of Appeal (Ex. 6 at 2-12) and, where noted, from the trial and jury selection transcripts (Exs. 3 and 5). On January 6, 2004, Angela Asoau and Aaron Rodrigues were in their home in San Bruno when two men entered their home and robbed the safe in the bedroom. Asoau testified that she encountered the first man when he appeared in the hallway, after she had stepped out of the kitchen. This first man put a gun against Asoau's cheek and forced her into the bathroom. The first man stood outside the bathroom while pointing the gun at her from about a foot away. Around thirty seconds later, Rodrigues emerged from the bedroom, whereupon the first man asked both Rodrigues and Asoau for the money. Asoau told him that it was in the bedroom, and then she heard drawers in the bedroom opening and shutting. Shortly after, Asoau heard their friend Danny knocking at the front door. At this point, a second man emerged from the bedroom, and both men went down some steps that led away from Rodrigues's bedroom.

After the two men went down the stairs, Asoau ran to the room where Rodrigues's sister Rebecca was sleeping, and told her to call the police. Asoau then went outside and saw a van in the middle of the street, as its door was closing. She then spoke with the police on the telephone, and an officer soon arrived at the house. He told her that "they had caught them on Skyline", and she agreed to accompany the officer to the scene where she could identify the men. At the scene, Asoau stated that she recognized the van as the same van she had seen after the two men left her house. Of the four male occupants of the van that the police had standing outside the van, Asoau identified Ronald Brooks (aka "Pooh Bear") as the robber that had held the gun to her cheek and forced her into the bathroom. Though Asoau recognized the three other men as Michael G., a minor, Melvin Dandridge and Nathan Seastrunk, she did not tell the police officers that she recognized them until later. Each of the three men is related to Asoau – Michael G. is her 16-year old cousin, Dandridge is married to Asoau's cousin Kathleen, and Seastrunk is

1  Dandridge's brother. After the robbery, Asoau checked the safe in the bedroom and determined
2  that some cash and jewelry were missing.

3  Asoau testified that she did not get a good look at the second robber who was in the
4  bedroom. She did state, however, that he was short and was wearing a jacket. She did not see
5  his face, and she could not definitively state the color of the jacket. Rodrigues testified that the
6  second robber in the bedroom had a "stocky build" and that Michael G. was skinnier than the
7  man in the bedroom.

8  Juvenile probation officer Regina Espinoza testified that she interviewed Michael G. the
9  day after the robbery, while Michael G. was in custody in juvenile hall. The interview took
10 place in a private kitchen area. Before the interview began, Espinoza read Michael G. his
11 *Miranda* rights, and asked him if he "still want[ed] to make a statement." Espinoza told him that
12 she was preparing a detention report, and that he could "make a statement or not." Espinoza also
13 told him that the purpose of a detention report is to recommend whether or not a person who had
14 been detained could be freed. Michael G. told Espinoza that he had remained in the van with
15 Melvin during the robbery, and that Nate and Pooh Bear went into the house. Michael G.
16 testified that just before the interview with Espinoza, he had been asleep for about half an hour.
17 He also testified that he was scared during the interview, and gave the answers he did because he
18 was scared. The interview did not take more than half an hour.

19 Corporal Guldner testified that during an interview in San Francisco with Michael G.,
20 Michael G. stated that "Nate and Pooh Bear" went into the house and committed the robbery.
21 Officer Seevers testified that he accompanied Michael G. to the police station interview room on
22 the night of January 6 and filled out a booking sheet. Because Michael G. was not sure of his
23 height and weight, Officer Seevers estimated his height to be five feet nine inches, based on
24 Seevers's own height, which was five feet ten inches.

25 Sergeant Mahon, the officer who was with Asoau when she observed the four men
26 outside the van, testified that Michael G. was approximately five feet nine or five feet ten inches.
27 He also testified that petitioner was the shortest of the four men who had come from the van.

28 Michael G. testified at trial. When asked about the night of the robbery and his

3

1  subsequent statements implicating petitioner, he generally responded by stating that either he did
2  not remember or he did not know the answer.  Michael G. also testified that he believed himself
3  to be five feet seven or five feet eight inches tall.

4  The prosecution introduced transcripts and recordings of several incriminating phone
5  conversations between defendant Seastrunk and his girlfriend, Tia Beckles.  Seastrunk also made
6  incriminating statements during phone calls to his mother.  Seastrunk made these phone calls
7  using the prison phone while he was in custody.  Seastrunk testified that he made those phone
8  calls knowing they would be recorded, and that his purpose in seeming to incriminate himself
9  was to cover for his mentally disabled brother, Melvin Dandridge.

10  Seastrunk was convicted of two counts of first-degree robbery, and the personal use of a
11  firearm on both counts was found to be true.

**ANALYSIS**

**A.    STANDARD OF REVIEW**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority under the first clause of Section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority

under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

**B.    ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts that: (1) his Fourteenth Amendment right to due process was violated when the trial court denied his request to exclude Michael G.'s out of court statements on the grounds that they were involuntary and unreliable; (2) his Fourteenth Amendment right to due process and Sixth Amendment right to confrontation were violated when the trial court determined that Michael G. could not invoke his Fifth Amendment right against compelled self-incrimination; (3) testimony by a Deputy District Attorney, Eddie Thomas, that the juvenile petition charged against Michael G. was dismissed for insufficient evidence constituted improper vouching in violation of petitioner's Fourteenth Amendment right to due process; (4) his Fourteenth Amendment right to due process and Sixth Amendment right to confrontation were violated when the prosecutor, during closing argument, referred to facts outside the record, misled the jury, and improperly vouched for a prosecutorial

5

witness; (5) his Fourteenth Amendment right to due process and Sixth Amendment right to a fair jury trial were violated when the prosecutor diluted the burden of proof during his closing argument, and his counsel's failure to object to the argument constituted ineffective assistance of counsel; (6) his Sixth Amendment right to confrontation was violated when the trial court admitted the booking and property sheet of Michael G.; (7) his Fourteenth Amendment right to due process was violated because of the cumulative impact of the foregoing constitutional errors; and (8) his Fifth, Sixth and Fourteenth Amendment right to a fair and impartial jury, due process, and a fair trial were violated when the trial court refused to excuse a juror for cause and refused petitioner's request for additional peremptory challenges.

### 1. Admission of Michael G.'s Out-of-Court Statements

Petitioner claims that his Fourteenth Amendment right to due process was violated when the trial court denied petitioner's request to exclude Michael G.'s statements to juvenile probation officer Espinoza on the grounds that they were involuntary and unreliable. Petitioner alleges that the statements were coerced because Espinoza implied a promise of leniency if Michael G. cooperated and threatened harsher treatment if he did not.

A defendant may assert his own due process right to a fair trial as a valid objection to the introduction of statements extracted from a non-defendant by coercion or other overbearing tactics. *Williams v. Woodford*, 384 F.3d 567, 593 (9th Cir. 2004). To determine the voluntariness of a confession, the court must consider the effect that the totality of the circumstances had upon the will of the speaker. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973). "The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988) (citing *Haynes v. Washington*, 373 U.S. 503, 513-14 (1963).

The Court of Appeal found Michael G.'s statements to Espinoza not to be involuntary or coerced (Ex. 6 at 17-19). The court rejected petitioner's argument that Espinoza's reference to a detention report constituted a promise of benefit or leniency (*id*. at 19). Additionally, in analyzing the totality of the circumstances, the court did not find any evidence of coercion

(*ibid.*). Neither the half-hour nap prior to the interview, nor Espinoza's statements during the interview, constituted impermissible coercion.

Considering the totality of the circumstances, the record does not support a finding that Michael G.'s statements were involuntary or coerced. Espinoza read Michael G. his *Miranda* rights. Contrary to the assertions of petitioner, Espinoza did not make any statements tantamount to an impermissible promise of leniency. Even though Michael G. testified during trial that he was scared during the interview, he did not attribute his fear to anything Espinoza had said or done. Espinoza never told Michael G. that answering her questions would determine whether he would get a deal. Espinoza's mere explanation of the purpose of the interview, to prepare a detention report, does not constitute an implied promise. Additionally, the interview lasted only half an hour, significantly less time than a one-hour questioning that the Ninth Circuit found not to be "extended and oppressive." *See United States v. Heller*, 551 F.3d 1108, 1112 (9th Cir. 2009). In light of the totality of the circumstances, the record does not support a finding that Michael G.'s statements to Espinoza were coerced or involuntary.

Petitioner also alleges that Michael G.'s statements to Corporal Guldner were improperly obtained because Michael G. was a youth placed alone in a police car with two officers. This allegation alone does not establish coercion or involuntariness, and petitioner alleges no other facts to support his claim.

Petitioner has not shown that his right to due process was violated by the admission of Michael G.'s statements to law enforcement. Consequently, the state court's denial of petitioner's claim was neither contrary to nor an unreasonable application of federal law.

**2.     Right to Confrontation**

Petitioner claims that the trial court's refusal to allow Michael G. to invoke the Fifth Amendment privilege against self-incrimination resulted in a violation of petitioner's Sixth Amendment right to confrontation.

The Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *See Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam). The Court of Appeal

7

found that since Michael G. was in the courtroom and readily testified, petitioner was not denied the opportunity to cross-examine him (Ex. 6 at 19-21). Because petitioner had the opportunity to cross-examine, the trial court did not violate petitioner's right to confrontation under the Sixth Amendment. The Court of Appeal also rejected petitioner's contention that Michael G.'s many answers of "I don't remember" and "no" constituted an assertion of the Fifth Amendment privilege (*id*. at 21).

Additionally, the Supreme Court has found the specific problems that petitioner alleges plagued Michael G.'s testimony do violate the Sixth Amendment right to confrontation:

> The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony. *Delaware*, 474 U.S. at 21-22.

In this case, Michael G. testified in court and was subject to a full cross-examination by petitioner. Petitioner alleges that Michael G.'s frequent answers of "I don't remember" and "no" inhibited petitioner's ability to effectively cross-examine Michael G. However, as shown above, the Supreme Court has explicitly acknowledged that a witness's "forgetfulness, confusion, and evasion" will not violate the right to confrontation, because the jury has the opportunity to observe the witness and make its own determination as to credibility.

Petitioner has not sufficiently alleged a Sixth Amendment confrontation violation. Consequently, the state court's denial of petitioner's claim was neither contrary to nor an unreasonable application of federal law.

**3.     Admission of Deputy District Attorney Testimony**

Petitioner claims that his Fourteenth Amendment right to due process was violated when the trial court allowed the prosecutor to introduce the testimony of Deputy District Attorney Eddie Thomas. Thomas was not the prosecutor in petitioner's trial, but the two of them worked at the San Mateo County District Attorney's Office.

Michael G. had previously been arrested in connection with a separate robbery in San Francisco that occurred approximately four months prior to the San Bruno robbery. Prior to Thomas's testimony, Michael G. testified that as part of a plea bargain in the San Francisco case

8

the San Mateo County District Attorney's Office dismissed the charges against him in the San Bruno case (Ex. 3 at 407). Thomas testified, however, that while Michael G. was offered a plea bargain of a felony robbery charge in the San Francisco case, the dismissal of the charge in the San Bruno incident was not a part of that plea bargain; rather, the charge in the San Bruno case was dismissed due to insufficient evidence (*id.* at 729-30). Thomas also confirmed that Michael G. did not receive any kind of deal in consideration for his testimony in the San Bruno case (*id*. at 730). At one point, the prosecutor asked Thomas whether "from review of the files, did Michael G. and his attorney accept the offer at the pretrial conference, that is admit the one robbery and have the other robbery dismissed?" (*ibid*.). Thomas responded "yes, sir." (*id*. at 731). Shortly after this response, however, Thomas reiterated that there was no deal for Michael G.'s testimony in the San Bruno case (*ibid*.). Upon cross-examination by petitioner, Thomas also repeated and defended his testimony that the charges against Michael G. in the San Bruno case were dismissed due to insufficient evidence (*id*. at 732-37).

The prosecutor had also asked Thomas if "there was anything about" the robbery charge in the San Francisco case that was also part of the plea bargain in that case (*ibid*.). Thomas responded by stating that "Michael G. was to give truthful testimony" in the San Francisco case if the prosecutor pursued any of the other minor defendants in that case, but as far as Thomas knew Michael G. never testified (*ibid*.).

Petitioner claims that the trial court impermissibly admitted Thomas's testimony that the charge against Michael G. in the San Bruno robbery was dismissed for insufficient evidence. Petitioner believes that Thomas's answer "yes sir" to the prosecutor's question whether "Michael G. and his attorney accept[ed] the offer at the pretrial conference, that is admit the one robbery and have the other robbery dismissed?" confirms that there was a plea bargain to dismiss the San Bruno charges and to reduce the San Francisco charges in exchange for Michael G.'s testimony in the San Bruno case. Therefore, petitioner argues, Thomas's testimony that the San Bruno charges were dismissed for insufficient evidence testimony was irrelevant, improper expert opinion, and improper vouching for the veracity of Michael G.

The Court of Appeal found that the trial court had permissibly allowed the introduction

9

1  of Thomas's testimony (Ex. 6 at 21).  The court found Thomas's testimony to be relevant,
2  because it concerned the disputed fact of whether Michael G. had received a plea bargain in
3  exchange for truthful testimony in the San Bruno case (*id*. at 24).  The court noted that it is well-
4  established that when a witness enters into a plea bargain, that fact bears on the witness's
5  credibility, and Thomas's testimony would be relevant to that issue (*id*. at 23).  The court also
6  determined that the testimony did not constitute improper expert opinion because Thomas was
7  only testifying to the reason the case against Michael G. was dismissed, and not whether Michael
8  G. was guilty or innocent of the crime (*id*. at 25).  The court also determined that the testimony
9  did not constitute improper prosecutorial vouching because normally prosecutorial vouching
10 only applies to the prosecutor, and Thomas was merely a witness (*id*. at 25-26).  Moreover,
11 Thomas's testimony was not vouching because he only described the terms of a plea agreement
12 in the record and he was not drawing from personal knowledge or belief of Michael G.'s
13 veracity.

14      The admission of evidence is not subject to federal habeas review unless a specific
15 constitutional guarantee is violated or the error is of such magnitude that the result is a denial of
16 the fundamentally fair trial guaranteed by due process.  *See Henry v. Kernan*, 197 F.3d 1021,
17 1031 (9th Cir. 1999).

18      Thomas's testimony was relevant.  Before Thomas testified, Michael G. had already
19 testified that he had received a deal from Thomas's office, and the jury could plausibly infer that
20 Michael G.'s testimony had less credibility.  To counter that inference, the prosecutor
21 permissibly called Thomas to testify that Michael G. was not offered a deal to testify in the San
22 Bruno robbery, and that the charges against him in the San Bruno robbery were dismissed due to
23 insufficient evidence.  Petitioner cross-examined Thomas about this testimony.  The fact that the
24 testimony did not help petitioner does not render it irrelevant.  Because the testimony was
25 relevant, there was no error in admitting it, and no resulting denial of a fundamentally fair trial.

26      Petitioner also alleges that Thomas's testimony constituted an impermissible expert
27 opinion on a question of fact that was entirely within the jury's province.  Presumably, petitioner
28 is referring to the question of Michael G.'s guilt or innocence.  However, Thomas did not give an

10

1  opinion on that issue, but merely relayed the reasoning of his office in dismissing the case
2  against Michael G..

3  Thomas's testimony also did not constitute improper prosecutorial vouching.  Improper
4  vouching for the credibility of a witness occurs when the prosecutor places the prestige of the
5  government behind the witness or suggests that information not presented to the jury supports
6  the witness's testimony.  *United States v. Parker*, 241 F.3d 1114, 1119-20 (9th Cir. 2001).
7  Petitioner does not allege that the prosecutor in his trial impermissibly vouched for Michael G.
8  As Thomas was not the prosecutor, it is unclear that he could engage in prosecutorial vouching.
9  In any event, Thomas's testimony simply explained that there was no plea bargain in the San
10 Bruno case, and that Michael G.'s case was dismissed for insufficient evidence.  Although this
11 testimony could be viewed as increasing Michael G.'s credibility, the testimony was not based
12 on Thomas's personal knowledge or belief about Michael G. or his trustworthiness, but rather
13 upon Thomas's knowledge about the circumstances under which Michael G.'s case was
14 dismissed.  As a result, he did not engage in improper prosecutorial vouching.

15 Thomas's testimony was not irrelevant, did not offer an improper opinion, and did not
16 constitute vouching.  As a result, Petitioner's claim that Thomas's testimony violated his
17 Fourteenth Amendment right to due process fails, and the state court's denial of petitioner's
18 claim was neither contrary to nor an unreasonable application of federal law.

19 **4.     Closing Argument Regarding Charges Against Michael G.**

20 Petitioner claims that the prosecutor violated his Fourteenth Amendment right to due
21 process during his closing statement.  The prosecutor argued that it would be difficult to find
22 Michael G. guilty of the robbery in order to defend Thomas's testimony that his office dismissed
23 the case due to insufficient evidence.  In so arguing, the prosecutor said "[I]f Michael G. was
24 simply sitting in the van and not doing anything to encourage or aid the robbers, then he is not
25 guilty, even if he knew" (Ex. 3 at 943-44).  Petitioner objected, and the court sustained the
26 objection (*id*. at 944).  The prosecutor then immediately made the same mistake again, saying
27 "[I]f anything I talk about is the evidence and you recall it differently, please rely on our own
28 memories. If I misstate the evidence, I'm not doing it intentionally. But I would submit it would

11

1  have been very hard to prove Michael G. aided, abetted, assisted the robbers" (*ibid*.). Petitioner
2  objected again (*ibid*.). The court again sustained the objection, and instructed the jury to
3  disregard the impermissible language (*ibid*.).

4      Petitioner argues that the prosecutor misled the jury and engaged in vouching when he
5  made these statements discussing why the charges against Michael G. were dismissed.
6  Petitioner also alleges that these statements constituted an impermissible reference to facts
7  outside the record during his closing argument.

8      A defendant's due process rights are violated when a prosecutor's misconduct renders a
9  trial fundamentally unfair. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Under
10 *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next
11 question is whether such conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d
12 1101, 1112 (9th Cir. 2005).

13     The Court of Appeal rejected petitioner's suggestion that the prosecutor's reference to
14 why the charges against Michael G. were dismissed misled the jury or constituted improper
15 vouching, since all of the prosecutor's statements were consistent with Thomas's testimony that
16 the charges were dismissed because of insufficient evidence and no other reason (Ex. 6 at 27).
17 Additionally, the Court of Appeal did not find the two statements referring to facts outside the
18 record to rise to the level of prosecutorial misconduct (*ibid*.). Moreover, even if the two
19 statements did constitute prosecutorial misconduct, the Court of Appeal noted that petitioner
20 objected to both statements, the trial court sustained both objections, and the trial court offered a
21 curative instruction (*ibid*.). The Court of Appeal presumed that the jury followed the trial court's
22 instruction to disregard the statement (*ibid*.).

23     The prosecutor's remarks regarding the reasons why the charges against Michael G. were
24 dropped were proper. The remarks were relevant because they were consistent with the evidence
25 presented at trial, most specifically with Thomas's testimony. It was left to the jury to decide
26 whether to accept Thomas's testimony. The remarks also did not constitute improper vouching
27 because as discussed above, Thomas's testimony as to the reasons the case was dropped against
28 Michael G. did not advance a personal belief in Michael G.'s credibility. While the two

12

1 statements speculating as to the difficulty of finding Michael G. guilty did constitute arguing
2 facts outside the record, the defense immediately objected to the statements and the trial court
3 sustained the objections and immediately issued curative instructions. When a curative
4 instruction is issued, a court presumes that the jury has disregarded inadmissible evidence and
5 that no due process violation occurred. *See Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987). The
6 jury is presumed to have followed the instructions to disregard the impermissible statements, and
7 there is no evidence suggesting that they did not. Taken in context, the two statements referring
8 to facts outside the record did not render the trial fundamentally unfair so as to violate due
9 process.

As the prosecutor's closing argument did not violate petitioner's Fourteenth Amendment right to due process, the state court's denial of petitioner's claim was neither contrary to nor an unreasonable application of federal law.

### 5. Closing Argument Regarding Burden of Proof

Petitioner claims that his Fourteenth Amendment right to due process was violated because the prosecutor impermissibly diluted the burden of proof during his closing argument. When describing the burden of proof during his closing argument, the prosecutor said:

> "[I]f reasonable doubt is anything, it's not, I have to be sure he's guilty. If a juror was to come back and say, I just wasn't sure he was guilty, my response perhaps would be, but you don't have to be sure he's guilty, you have to be convinced beyond a reasonable doubt he's guilty. Okay. It's not the same thing" (Ex. 3 at 965).

Petitioner's counsel did not object to these statements, *ibid.*, and prior to the closing arguments, the court had previously given proper instructions on reasonable doubt (Ex. 3 at 914). The jury used California's reasonable doubt instruction, CALJIC 2.90, during its deliberations (Ex. 1 at 548). In addition, petitioner claims that his counsel's failure to object to the prosecutor's description of the burden of proof constitutes a violation of his Sixth Amendment right to effective assistance of counsel.

The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *In re Winship*, 397 U.S. 358, 364 (1970). Additionally, California's reasonable doubt instruction, CALJIC 2.90, has been found constitutionally fit. *See*

13

*Lisenbee v. Henry*, 166 F.3d 997, 999-1000 (9th Cir. 1999).

The Court of Appeal did not find the prosecutor's description of the burden of proof to be objectionable, finding no reasonable likelihood that a jury would construe any of the prosecutor's remarks about the burden of proof in an objectionable way (Ex. 6 at 28). Even if there had been an error, the court found it cured by the trial court's proper instructions on reasonable doubt. Moreover, any objection by petitioner's counsel would have been unavailing because the prosecutor's statements were not objectionable (*ibid.*).

The Court of Appeal was correct in finding that the prosecutor's remarks did not impermissibly dilute the burden of proof. The remarks served to reinforce the fact that the jury need not be one hundred percent certain that the defendant committed the crime in order to come to a guilty verdict. Indeed, the burden of proof requires only no reasonable doubt. In any case, the court properly instructed the jury to "accept and follow the law as I state it to you, whether – regardless of whether you agree with it. If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, you must follow my instructions" (Ex. 3 at 904). As a result, even if the prosecutor did misstate the burden of proof, the jury was instructed to follow the court's instructions over any conflicting instructions of the prosecutor. *See Boyde v. California*, 494 U.S. 370, 384-85 (1990) (stating that prosecutorial misrepresentations are not to be judged as having the same force as an instruction from the court). As an additional confirmation that the jury received correct instruction on the burden of proof, the jury was given CALJIC No. 2.90, the reasonable doubt instruction upheld by the Ninth Circuit. *See Lisenbee*, 166 F.3d at 999-1000. The jury is presumed to have followed the trial court's instructions, *see Weeks v. Angelone*, 528 U.S. 225, 234 (2000), rather than any contrary argument by the prosecutor, *see Boyde*, 494 U.S. at 384-85.

Petitioner also alleges that the failure of his counsel to object to the prosecutor's alleged dilution of the burden of proof constituted a Sixth Amendment ineffective assistance of counsel violation. In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner must establish that counsel's performance was deficient, i.e., that it fell below an 'objective

14

1  standard of reasonableness' under prevailing professional norms, and that he was prejudiced by
2  counsel's deficient performance, i.e., that "there is a reasonable probability that, but for
3  counsel's unprofessional errors, the result of the proceeding would have been different."
4  *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).  Because the prosecutor did not
5  misstate or dilute the burden of proof, any objection would have been pointless.  As petitioner
6  cannot establish that counsel acted unreasonably in failing to object, the claim of ineffective
7  assistance of counsel on this basis fails.

8       The prosecutor's remarks did not impermissibly dilute the burden of proof, and as a
9  result, defense counsel did not fail to provide effective assistance of counsel when he did not
10 object to them.  Consequently, the state court's denial of petitioner's claim was neither contrary
11 to nor an unreasonable application of federal law.

12      **6.     Confrontation Clause -- Juvenile "Booking" and "Property" Sheets**

13      Petitioner claims that the trial court violated his Sixth Amendment right to confrontation
14 by admitting the booking and property sheets, and permitting Barry Thompson, an employee of
15 the San Mateo County Probation Department, to read from the exhibits when he testified, even
16 though the exhibits were prepared by someone else.  Thompson testified as to the contents of
17 Michael G.'s juvenile hall booking sheet and property sheet (Ex. 3 at 703-708).  Thompson
18 stated that he did not create the documents, and petitioner objected to the parts of Thompson's
19 testimony relating to Michael G.'s physical description as hearsay (*id*. at 706, 707).  The trial
20 court overruled the objections.  (*Ibid.*).  The creator of the booking report, Officer Seevers, had
21 testified at trial, and gave specific testimony relating to the physical description of Michael G.
22 and his creation of the booking report.  Petitioner had the opportunity, and took advantage of the
23 opportunity, to cross-examine him (*id*. at 588-593).

24      The Court of Appeal did not determine whether there was a Confrontation Clause
25 violation with respect to either the booking report or the property sheet, but rather rejected the
26 claim based on a lack of prejudice (Ex. 6 at 29-30).  The court found no prejudice because the
27 two documents contained no information that was not already in the record (*ibid.*).  Additionally,
28 these documents were not crucial to identifying the men who committed the robbery (*id*. at 29).

15

Although the Court of Appeal did not address whether or not there was a confrontation clause violation with respect to the booking sheet, because Officer Seevers, the booking sheet's author, testified and was available for cross-examination, there was no confrontation violation. "The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*" *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (emphasis in original). "[The confrontation clause] commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 61 (2004). Officer Seevers testified at trial, and testified specifically as to how he determined Michael G.'s height and how he recorded that information in the booking sheet. Petitioner took advantage of the opportunity to cross-examine Officer Seevers. The prosecutor did not object to any of petitioner's questions on cross-examination, and petitioner does not allege that the cross-examination of Officer Seevers was limited in any way. Because of this opportunity for cross-examination, there was no violation of petitioner's right to confrontation with regard to the booking sheet.

With respect to the property sheet, there is no indication of any prejudice from its admission even if such admission amounted to a Confrontation Clause violation. A showing of constitutional error under the Confrontation Clause only merits habeas relief if the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Holley v. Yarborough*, 568 F.3d 1091, 1100 (9th Cir. 2009) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)). The Court of Appeal referred to petitioner's claim that the property sheet established that Michael G. was not wearing a jacket when he was booked into custody (Ex. 6 at 29). However, the prosecution did not make the clothing worn by the second robber an important issue in the case. Asoau testified that the second robber was wearing a jacket that was "maybe tan or maybe a mustard color. I'm not sure" (Ex. 3 at 303). Rodrigues, alternatively, testified that the second robber was wearing "dark clothing" (*id*. at 442). Thus, there was no consistent evidence as to the jacket or other clothing of the second robber, and the prosecutor certainly did not advance the jacket as determinative in identifying the robber. As a result, admission of the property sheet, with its lack of a reference to a jacket being worn by Michael G.

16

while he was in custody, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 638.

Under these circumstances, the state courts' rejection of petitioner's claim was neither contrary to nor an unreasonable application of clearly established federal law, and petitioner is not entitled to habeas relief on this claim.

### 7. Cumulative Error

Petitioner claims that the cumulative effect of the errors identified in issues one through six were cumulatively prejudicial.

Petitioner cites no Supreme Court precedent, and the Court is aware of none, providing that the cumulative effect of multiple alleged errors may violate a defendant's due process right to a fair trial. As discussed above, AEDPA mandates that habeas relief may be granted only if the state courts have acted contrary to or have unreasonably applied federal law as determined by the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. at 412.  In any event, for the reasons discussed, of the six claims of error, only one potentially had a violation, and that violation was not sufficiently prejudicial as to qualify for habeas relief.

Accordingly, the state court's decision denying Petitioner's claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d).

### 8. Right to a Fair and Impartial Jury

Petitioner claims that the trial court violated his Sixth Amendment right to a fair and impartial jury when the trial court denied his challenge for cause, thereby depriving him of a peremptory challenge he would have used to excuse a juror who eventually sat on his trial. During jury selection, potential juror "Mr. Church" initially withheld information regarding both his prior DUI and the fact that he was the victim of an armed robbery perpetrated by African-American males (Ex. 5 at 203-09).  Both incidents were approximately 18-20 years prior to petitioner's trial, and Mr. Church confirmed that neither event would influence his ability to be

an impartial juror (*id.* at 208-09). Petitioner then made a for-cause challenge against Mr. Church, which the trial court rejected, on the grounds that Mr. Church had not disclosed the information out of embarrassment, and that the court was confident Mr. Church could proceed as a fair and impartial juror (Ex. 3 at 230-233). Petitioner then requested ten more peremptory challenges, and the trial court denied the request (Ex. 3 at 234-36). The court then granted petitioner's peremptory challenge of Mr. Church (Ex. 5 at 288). Petitioner still had one peremptory challenge remaining, which he never used.

To disqualify a juror for cause requires a showing of either actual or implied bias – "'that is . . . bias in fact or bias conclusively presumed as a matter of law.'" *United States v. Gonzalez*, 214 F.3d 1109, 1111 (9th Cir. 2000) (quoting 47 Am. Jur. 2d Jury § 266 (1995)). The Court of Appeal found that the trial court's decision not to excuse Mr. Church for cause was supported by substantial evidence, including Mr. Church's regret for not disclosing the previous incidents, and his apology for the lack of disclosure (Ex. 6 at 32). The Court of Appeal made a reasonable determination that Mr. Church was not biased, given that he admitted his reason for not initially disclosing the incidents being one of embarrassment. In any event, Mr. Church was peremptorily challenged and never served on petitioner's jury. Petitioner's claim of an impartial jury cannot be based on the alleged bias of a potential juror who never served on petitioner's panel. The Supreme Court has refused a similar challenge where the petitioner alleged that a peremptorily challenged juror who never served on the actual jury was biased. *See Ross v. Oklahoma*, 487 U.S. 81 (1988). Any claim that the jury was not impartial, therefore, "must focus not on [the peremptorily challenged juror], but on the jurors who ultimately sat. None of those 12 jurors, however, was challenged for cause by petitioner, and he has never suggested that any of the 12 was not impartial." *Id.* at 86. Because Mr. Church never served on petitioner's jury, and because Mr. Church has not alleged that any of the twelve jurors who actually served was biased, petitioner's claim that the trial court violated his Sixth Amendment right to an impartial jury fails.

Additionally, petitioner claims his Sixth Amendment right to an impartial jury was violated due to the trial court's failure to grant him ten additional peremptory challenges. The

1  Supreme Court rejected the notion that "the loss of a peremptory challenge constitutes a
2  violation of the constitutional right to an impartial jury. We have long recognized that
3  peremptory challenges are not of constitutional dimension." *Id*. at 88.  As long as the jury that
4  sits is impartial, the loss of a peremptory challenge does not violate the Sixth Amendment.  *Ibid*.

5  Because petitioner has not alleged that any juror on his actual panel was biased, and
6  because any loss of a peremptory challenge is not a Sixth Amendment violation, the trial court
7  did not violate petitioner's Sixth Amendment right to an impartial jury.  Consequently, the state
8  court's denial of petitioner's claim was neither contrary to nor an unreasonable application of
9  federal law.

**CONCLUSION**

The petition for a writ of habeas corpus is **DENIED**.

Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied.  Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this court's denial of his claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Consequently, no certificate of appealability is warranted in this case.

The clerk shall enter judgment close the file.

**IT IS SO ORDERED.**

Dated: November  29 , 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.08\SEASTRUNK3444.RUL.wpd

**United States District Court**
For the Northern District of California